# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DARRYL McGLOTHIAN**
        Petitioner,

    v.                                         Case No. 05-C-0585
                                                            (Criminal Case No. 03-CR-237)

**UNITED STATES OF AMERICA**
        Respondent.

---

## DECISION AND ORDER

Petitioner Darryl McGlothian filed a motion under § 2255 alleging that his lawyer provided ineffective assistance by failing to file a notice of appeal.[1] Because the record contained a dispute as to what happened, I held an evidentiary hearing on the issue, at which petitioner, his parents and counsel testified. Upon review of the testimony and the entire record, I deny the motion.

### I. FACTS

Petitioner pleaded guilty to armed bank robbery, 18 U.S.C. § 2113(a) & (d), and brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), pursuant to a plea agreement with the government. In the agreement, the parties stipulated that petitioner faced up to twenty-five years in prison on the bank robbery count, and a minimum of seven years (up to life) consecutive to any other sentence on the § 924(c) count. (Case No. 03-CR-237, Plea Agreement [R. 28] at 3 ¶ 6.) The parties also agreed

---

[1]He raised other claims as well, which I summarily denied under Rule 4 of the Rules Governing Section 2255 Proceedings.

to the applicable guidelines on count one – base level 20, U.S.S.G. § 2B3.1(a), plus 2 because the property of a financial institution was taken, § 2B3.1(b)(1), plus 2 based on reckless endangerment during flight, § 3C1.2, and minus 3 for acceptance of responsibility, § 3E1.1.[2] (Id. at 5-6 ¶¶ 15-19.) At the plea hearing, petitioner advised me that he had read the plea agreement and discussed it with his lawyer. (Case No. 03-CR-237, March 2, 2004 Plea Hr'g Tr. at 5.) I also advised him of the penalties he faced, including the mandatory consecutive sentence on the § 924(c) count, and he assured me understood that as well. (Id. at 5-6.)

At sentencing, which occurred about a week after the Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004), defense counsel, Dennis Ryan, argued that, notwithstanding the language of § 924(c)(1)(D)(ii),[3] 18 U.S.C. § 3553 provided me with discretion to consider running the sentences concurrently. I rejected the argument. (Case No. 03-CR-237, June 30, 2004 Sen. Hr'g Tr. at 3-6.) I asked Ryan and petitioner whether they were waiving any right to a jury determination beyond a reasonable doubt on the guideline enhancements, and they both stated they were. (Id. at 6-7.) I then sentenced petitioner to 41 months in prison on count one, the low end of the guideline range, and 84 months consecutive on count two, for a total of 125 months. Petitioner filed no notice of appeal.

---

[2]The guideline on count two was seven years consecutive. U.S.S.G. § 2K2.4.

[3]That provision provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii).

2

On May 27, 2005, petitioner filed the instant § 2255 motion. In the motion, petitioner alleged that he instructed Ryan to file a notice of appeal but counsel failed to do so. (R. 1, Mem. of Law at 2.) The government responded with an affidavit from Ryan, in which Ryan averred that petitioner did not instruct him to appeal. Based on the direct conflict between Ryan and petitioner, I scheduled an evidentiary hearing.

At the hearing, petitioner testified that after sentencing Ryan asked him if he wanted to appeal, and petitioner replied that they would need to talk about it. Petitioner stated that Ryan was supposed to come see him at the jail the next day but never came or otherwise contacted him. Petitioner testified that he called his parents and asked them to contact Ryan. His parents both testified that they called Ryan and left messages, but Ryan never contacted petitioner. Petitioner admitted that he never sent Ryan a letter and stated that he relied on his parents to reach Ryan.

Petitioner testified that he was interested in appealing based on two issues. First, he stated that he believed he would get concurrent time. He admitted that both the plea agreement and the court told him that the time on the § 924(c) count had to run consecutive, but he stated that his lawyer told him something different. Second, petitioner testified that his attorney mentioned that he might have an appeal on double jeopardy grounds.[4]

Ryan, a lawyer for more than ten years, testified that his practice was devoted to criminal law, mainly in federal courts. Ryan stated that petitioner never asked him to appeal. He stated that he discussed an appeal with petitioner in the Marshal's lock-up

---

[4]Petitioner raised the concurrent time and double jeopardy issues in the instant § 2255 motion. I denied both claims under Rule 4.

3

after sentencing, and petitioner asked if an appeal could make things worse. Ryan stated that he thought not, but that he could not be sure because the law was in a state of flux. Petitioner told Ryan to forget it, and Ryan advised petitioner to contact him if he changed his mind. Petitioner did not contact Ryan about an appeal thereafter. About one year later, petitioner's mother did call, but about a <u>Booker</u> issue.

Ryan testified that he had nothing in his file about an appeal other than that he met with petitioner after sentencing. However, the government provided him with a copy of the affidavit he had previously prepared, which referred to a note in his file indicating that petitioner did not want to appeal. At the hearing, Ryan could not locate the note – or any of his notes from the case – in the file he brought to court. Ryan testified that his affidavit was not mistaken; the file he had was missing his green note paper. He stated that he had recently moved offices. He testified that he reviewed his notes and saw the notation about an appeal at the time he prepared the affidavit.

Ryan denied that he discussed a double jeopardy issue with petitioner because there was no foundation for it. He also stated that he never guaranteed petitioner concurrent time on the two counts. He testified that he told petitioner that the statute required a seven year consecutive sentence.

Ryan concluded that if petitioner had told him to appeal he would have filed the notice. He stated that he had filed notices of appeal in other federal cases.

4

## II. DISCUSSION

**A.    Legal Standard**

Ordinarily, a defendant seeking to establish ineffective assistance of counsel must demonstrate both that counsel's performance was deficient and that as a result he suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, if the defendant shows that his lawyer performed deficiently by failing to file a notice of appeal on request he is entitled to relief under § 2255, without regard to the possibility of success on appeal. Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994); see also Roe v. Flores-Ortega, 528 U.S. 470 (2000). This is so because, in that circumstance, the defendant has been denied not the effective assistance of counsel but all assistance of counsel; thus, prejudice is presumed, and the petitioner need not demonstrate that the appeal had any merit. See Penson v. Ohio, 488 U.S. 75, 88 (1988).

In Flores-Ortega, the Court set forth the standards for evaluating claims of ineffective assistance in the context of filing a notice of appeal. First, if counsel consulted with the defendant about an appeal, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. 528 U.S. at 478.

Second, if counsel did not consult with the defendant, the court must ask whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id. Counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular

5

defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. To show prejudice in that circumstance, the defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id. at 484. As on the performance prong, evidence that there were non-frivolous grounds for appeal or that the defendant promptly expressed a desire to appeal will often be highly relevant in making this determination. Id. at 485. Thus, the performance and prejudice inquiries are similar; specifically, both may be satisfied if the defendant shows non-frivolous grounds for appeal. Id. at 486. However, unlike the performance prong, evidence that the defendant demonstrated to counsel his interest in an appeal "is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Id.

**B.   Analysis**

In the present case, Ryan and petitioner both testified that after sentencing they discussed a possible appeal. Ryan testified that he left the meeting believing that petitioner was not interested in appealing and would contact him if he changed his mind. Petitioner claimed that he was interested in appealing and that counsel was supposed to visit him to discuss the matter further. Petitioner's parents testified that they subsequently tried to contact Ryan about an appeal.

Based on their demeanor and the entire record, I find Ryan's testimony more credible than petitioner's. I find that Ryan did consult with petitioner about an appeal, and that petitioner did not direct Ryan to file a notice.

6

Ryan, an experienced federal criminal defense attorney, testified in a straightforward manner about the matter. While he did not have perfect recall, he credibly testified that he discussed an appeal with petitioner after sentencing in the lock-up, and petitioner decided not to proceed. Petitioner did not subsequently contact counsel stating that he had changed his mind. Nor did he send Ryan any letters about the appeal. In fact, petitioner produced nothing demonstrating a desire to appeal prior to May 27, 2005, nearly a year later, when he filed the instant § 2255 motion. In the motion, petitioner raised claims based on Blakely and Booker, which created a potentially more favorable sentencing landscape for defendants. A resurrected appeal at this time would allow petitioner to take advantage of Booker and perhaps obtain a remand under United States v. Paladino, 401 F.3d 471 (7th Cir. 2005). I find that this was likely a significant motivating factor in petitioner's professed desire to appeal. This finding is bolstered by Ryan's testimony that about a year after sentencing petitioner's mother called him about Booker issues. Finally, petitioner's hearing testimony was contrary to what he stated in his motion. In the motion, he claimed that he instructed Ryan to appeal but Ryan failed to do so. But at the hearing, he testified only that Ryan was supposed to visit to further discuss an appeal. This important contradiction undermines his credibility.

I further find that Ryan was not obligated to meet with petitioner again, given the way he left things with petitioner. It is not incumbent upon a defense attorney, whose client expresses no interest in appeal after consultation and who has no non-frivolous issues to appeal, to continue to check in with the client for the next ten days in case the client changed his mind. There is no evidence that petitioner contacted Ryan within that time

7

and expressed an interest in appealing. Therefore, petitioner has failed to show that Ryan performed deficiently.

I further find that petitioner has failed to demonstrate that, even if Ryan had come to see him again at the jail, there is a reasonable probability that he would have appealed. Although petitioner need not demonstrate a winning appellate issue at this stage, the lack of any significant issues for appeal certainly undermines his claim. Petitioner stated that he wanted to appeal because he received consecutive sentences and because his two convictions violated the Double Jeopardy Clause. However, as I explained in more detail in my Rule 4 Order, these claims lack any merit.[5] The statute required petitioner to receive consecutive time, as he was advised both in the plea agreement and during the plea colloquy. Ryan made a half-hearted effort to argue that I had discretion to impose concurrent time under § 3553(a), but he credibly testified that he never guaranteed petitioner concurrent time.[6] Ryan also credibly testified that he never told petitioner that he had a double jeopardy argument, and, under United States v. Larkin, 978 F.2d 964, 972 (7th Cir. 1992), he clearly does not. Thus, petitioner fails to demonstrate any non-frivolous issues for appeal. Further, petitioner's convictions came by way of guilty pleas, and the sentence he received could hardly have come as a surprise given the guideline

---

[5]In his motion, petitioner also raised a claim under Apprendi and its progeny. To the reasons provided in the Rule 4 Order, I add that petitioner specifically waived his rights under Blakely at sentencing, which renders any claim under that decision frivolous. United States v. Peterson, 414 F.3d 825, 828-29 (7th Cir. 2005).

[6]As I stated in the Rule 4 Order, even if Ryan did make such a guarantee off the record, I disabused petitioner of any belief that he could get concurrent time during the plea colloquy. See Peterson, 414 F.3d at 827 (affirming denial of motion to withdraw the plea where the defendant claimed counsel promised concurrent time but the district judge advised the defendant that the § 924(c) sentence had to run consecutive).

8

calculations to which he agreed in the plea agreement. As the Court noted in Flores-Ortega,

> a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

528 U.S. at 480. In the instant case, defendant pled guilty, preserving no issues for appeal, and received the precise sentence he bargained for in the plea agreement. Finally, petitioner has failed to produce any credible, objective evidence indicating that he would have timely appealed had counsel visited with him again. He made no personal attempt to contact Ryan, and he undertook no actions himself to proceed with an appeal until almost a year later.[7]

Petitioner relies on his parents' testimony as evidence of his desire to appeal, but I found their testimony unpersuasive. They were unable to provide much in the way of specifics as to their communications with Ryan. For instance, they were unable to recall anything about his voice mail, which Ryan testified he personalized every day. Further, as concerned parents who admittedly were disappointed by the outcome of the case, they had

---

[7]Petitioner's appointed counsel notes that petitioner was not required to file the notice of appeal himself if he could not reach Ryan. See Kusay v. United States, 62 F.3d 192 (7th Cir. 1995). This is true, but I find that petitioner did not seek to advise Ryan to file the appeal during the ten-day period. I also find that the lack of any evidence that petitioner wanted to appeal until nearly a year later undermines his claim.

9

motives to slant their testimony in petitioner's favor. Finally, I find it odd that they and not petitioner would make the only efforts to contact Ryan within the ten-day period.

Petitioner's appointed counsel argues that this case is like United States v. McKenzie, 99 F.3d 813, 815-16 (7th Cir. 1996), where the court allowed a belated appeal because the defendant's lawyer went on vacation right after sentencing and thus was totally inaccessible to the defendant during the ten-day period. There is no credible evidence in the instant case that Ryan was inaccessible during the ten-day period. I find that Ryan was available for contact during the ten-day period, and credit Ryan's testimony that petitioner did not direct him to file an appeal during that time.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**. The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 1st day of September, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge